UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHARLES HERITZ and<br>MICHELLE HERITZ,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE CITY OF SOUTH BEND,<br>CHIEF OF POLICE THOMAS FAUTZ,<br>OFFICER MICHAEL VAN VYCKT,<br>THE COUNTY OF ST. JOSEPH,<br>ST. JOSEPH COUNTY SHERIFF FRANK<br>CANARECCI and UNKNOWN DEPUTIES<br>OF THE ST. JOSEPH COUNTY JAIL,<br><br>    Defendants. | Case No.: 3:07-CV-626 JVB |

**OPINION AND ORDER**

Plaintiff Charles Heritz was drunk, standing outside his house and yelling obscenities at his neighbor, when Defendant Officer Michael Van Vyckt[1] arrested him. Charles and his wife now claim that Officer Van Vyckt used excessive force during the arrest and that unknown officers at the St. Joseph Jail were deliberately indifferent to his serious medical needs. In their pleadings, they also claim that the City of South Bend and the St. Joseph County are liable to them for allowing their employees to maintain illegal practices. In addition, the Plaintiffs allege that the Defendants have violated the Indiana Constitution and laws.

All Defendants moved for summary judgment. In their Response, the Plaintiffs concede that they have no claims against the City of South Bend, the Chief of Police Thomas Fautz, the

---

[1] In the parties' briefs, Van Vyckt and Van Vynckt are the two spelling variations for the same officer. Since the Court does not know the correct spelling of the name, it will use the spelling used in the caption of the case.

St. Joseph County, or the St. Joseph County Sheriff Frank Canarecci. Moreover, because the Plaintiffs have not identified and have not served the Unknown Deputies of the St. Joseph County Jai, these unnamed persons must be dismissed from the case. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) ("Due to [plaintiff's] failure to identify [an unnamed defendant] and the lack of any record that this individual was served with process, the district court's grant of summary judgment for this unknown and unnamed defendant is modified to dismiss this defendant from the case.").[2] Likewise, by failing to respond to Officer Van Vyckt's arguments regarding their state claims against him, the Plaintiffs have waived those claims. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) (an issue not presented by plaintiff in district court, in response to defendant's summary judgment motion, was waived). Accordingly, in the remainder of this opinion, the Court addresses only the Defendant Officer

---

[2]Even if the Plaintiffs had identified the jail defendants, their case against them would not have survived summary judgment. The Plaintiffs had to show that Charles suffered from a serious medical condition and the jail officers were deliberately indifferent to his serious condition, which is essentially the same as the standard for subjective criminal recklessness. *Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir. 1985) (finding criminal recklessness to be the proper standard for deliberate indifference). As the County Defendants point out in their briefs, the Plaintiffs have utterly failed to show that anyone at the jail was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that he or she drew the inference, so as to satisfy the elements for an Eighth Amendment claim. *See Pavlick v. Mifflin*, 90 F.3d 205, 207–08 (7th Cir. 1996) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Likewise, the Plaintiffs' state claims against the jail officers would have reached the same end as the federal ones, as they have not introduced any evidence that the jail officers acted outside the scope of their employment during Charles's detention. *See* Ind. Code § 34-13-3-3(8) ("A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce a law [including rules and regulations], unless the act of enforcement constitutes false arrest or false imprisonment.").

Van Vyckt's motion for summary judgment. As explained below, that motion must be denied as to the Plaintiffs' Fourth Amendment claims, weak as they may be.

**A. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, the burden of showing that an issue of material fact exists thereby shifts to the non-moving party. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986). "Whether a fact is material depends on the substantive law underlying a particular claim and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir. 1988), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Furthermore, the Northern District of Indiana Local Rule 56.1 specifies that the non-moving party "shall include [in the text of the Response] or appendix thereto, a 'Statement of Genuine Issues' setting forth . . . all material facts as to which it is contended there exists a genuine issue necessary to be litigated."

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). However,

> In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition of the motion.

L.R. 56.1(b).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50 (1986).

Generally, pro se litigants are subject to the same waiver rules as litigants represented by counsel. *See Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir.1995).

**B. Facts**

Around midnight of October 15, 2006, Plaintiffs Charles and Michelle Heritz, returned home from a wedding. Charles was drunk—at the wedding he emptied two pitchers of beer and some mixed drinks that had two shots in them—and was fighting with Michelle. Their neighbor Edward Gaddey, saw the altercation. He also saw Charles driving recklessly his car around the block. Mr. Gaddey called the police.

Meanwhile, Charles drank a couple more beers and went into his house, sat in a recliner, and fell asleep. He was woken up by several police officers, who told Charles that they had received a complaint that he and Michelle were fighting and asked him to give the car keys to Michelle. Charles complied, and the officers left.

Once the officers were gone, Charles went outside and began shouting obscenities at Mr. Gaddey. According to Michelle, Charles was barely able to walk. In fact, had she pushed him, he would have fallen over. Yet this did not stop Charles from approaching Mr. Gaddey's house and challenging him to a fight. Mr. Gaddey's wife, Jennifer, also came outside. Charles had two beers in his hands.

At this time, Officer Michael Van Vyckt was running from his car, which was about half of football field away, toward Charles. Officer Van Vyckt did not announce himself and Charles did not see him, but he could hear the jingling of keys. Charles turned and took two steps, when Officer Van Vyckt tackled him to the ground. Charles fell on his back, and Officer Van Vyckt turned him over to handcuff his hands behind the back. As Charles was laying down on his stomach, Officer Van Vyckt pressed his knee hard against Charles's back. Charles claims that he

did not resist Officer Van Vyckt.³

Charles was handcuffed and taken to St. Joseph County Jail at 2:39 a.m. At 3:00 a.m., he was examined by a nurse. The nurse did not see any visible trauma but indicated that he had pain in his ribs. Charles asked to be taken to the hospital at least six of seven times, but the jail refused. The staff told him that before he could be taken, he had to "blow clean."

At 8:00 a.m., Charles was seen by the jail doctor who ordered him to be taken to the hospital. Charles bonded out at 8:26 a.m., and one of the officers took him to the hospital. At the hospital, Charles was diagnosed with four broken ribs, a punctured lung, and a ruptured spleen, which had to be removed. Charles stayed in the hospital for about a month.

**C. Discussion**

**(1)** *Plaintiff's Excessive Force Claim against Officer Van Vyckt*

Section 1983 is not a source of substantive rights. Instead, it provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel. Higgin v. Johnson*, 346

---

³This account is contradicted by Mrs. Gaddey, who testified in her deposition that Officer Van Vyckt tried to resolve the situation peacefully. She testified that Plaintiff threw one of the beers at Officer Van Vyckt and turned to run away, but tripped and fell down. Mrs. Gaddey then saw Officer Van Vyckt put his knee on Charles's back and handcuff him. Of course, for the purpose of summary judgment, the Court does not weigh evidence and casts all facts in the light most favorable to the Plaintiffs.

F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)). A Plaintiff must show that the defendant was personally involved in depriving him of his constitutional rights. *See Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir.1997).

A primary defense to a claim under § 1983 is qualified immunity. Qualified immunity shields officers from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sullivan v. Ramirez*, 360 F.3d 692, 696 (7th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]he inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001). Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. Saucier v. Katz, 533 U.S. 194, 200 (2001). "[P]laintiff bears the burden of showing the existence of allegedly clearly established constitutional right." *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996).

The parties do not dispute that Officer Van Vyckt acted under color of state law. Hence, the Court must determine only if there is a genuine issue of material fact as to whether Officer Van Vyckt deprived Charles of a right secured by the Fourth Amendment to the United States Constitution—that is, a right to be free from unreasonable seizure—by using excessive force in arresting Charles.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Acevedo v. Canterbury*, 457 F.3d 721, 724 (7th Cir. 2004). The dispositive question is whether the actions of the officers were

7

"objectively reasonable" in light of the facts and circumstances that confronted the officers. *Graham v. Conner*, 490 U.S. 386, 397 (1989). This inquiry is to be made according to the knowledge of an officer who was at the scene, not according to the "20/20 vision of hindsight." *Id.* at 396. Three factors should be considered in this inquiry: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether he is actively resisting arrest by flight. *Id.*

Having considered these factors, the Court finds that there is a genuine issue of fact as to whether Officer Van Vyckt used excessive force in arresting Charles. Charles maintains that Officer Van Vyckt tackled him from behind without any warning and without provocation. Furthermore, Charles insists that he did not resist Officer Van Vyckt. Although Charles was yelling obscenities at his neighbor and challenging him to a fight at the time, it is not clear what Officer Van Vyckt saw or knew so as to justify enough force against Charles that would presumably break his four ribs, puncture a lung, and rupture his spleen. For the same reason, the Court cannot at this time resolve the issue of qualified immunity. Therefore, the Court will deny Officer Van Vyckt's motion for summary judgment.

**(1)** *Plaintiff's State Claims against Officer Van Vyckt*

However, Officer Van Vyckt is entitled to summary judgment on the Plaintiffs state claims. When acting within the scope of employment, government employees are immune from tort liability if the loss results from "[t]he adoption and enforcement of or failure to enforce a law." Ind. Code § 34-13-3-3(8). Thus, police officers are entitled to immunity if they are engaged in the enforcement of a law and acting within the scope of their employment. *Kocon v.*

*Lake County Sheriff's Dep't*, 2007 WL 1959239, *11 (N.D. Ind. 2007). This immunity applies even if the officer's conduct is egregious and contrary to law. *City of Anderson v. Davis*, 743 N.E.2d 359, 365 (Ind. App. 2001).

Here, Officer Van Vyckt was acting within the scope of his employment and was enforcing the law because he was executing an arrest. Therefore, he is entitled to immunity and summary judgment must be granted on this claim.

**D. Conclusion**

The Court—

- Dismisses the Unknown Deputies of the St. Joseph County Jail;

- Grants the motion for summary judgment filed by Defendants the County of St. Joseph and St. Joseph County Sheriff Frank Canarecci (DE 31);

- Denies-in-part and grants-in-part the motion for summary judgment by Defendants the City of South Bend, Chief of Police Thomas Fautz, and Officer Michael Van Vyckt (DE 32). Defendants the City of South Bend and Chief of Police Thomas Fautz are dismissed.

- Reaffirms the trial setting against Officer Michael Van Vyckt.

SO ORDERED on November 4, 2009.

    s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE